UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIFFANY MILLER | CIVIL ACTION |
| VERSUS | NO: 12-0021 |
| SPRINT/UNITED MANAGEMENT COMPANY | SECTION: "A" (3) |

### ORDER AND REASONS

Before the Court is <u>Defendant's Motion for Summary Judgment</u> (Rec. Doc. 54) filed by Defendant Sprint/United Management Company ("Sprint"). Incorporated therein are Sprint's prior summary judgment filings. (Rec. Docs. 22, 23, and 36). This motion is opposed by Plaintiff Tiffany Miller ("Miller"). (Rec. Doc. 57). In her opposition, Miller also moves for summary judgment. (*Id.*). These filings, scheduled for submission on April 10, 2013, are before the Court on the briefs without oral argument. For the following reasons, Sprint's motion is **DENIED** and Miller's motion is **GRANTED**.

### I.   PROCEDURAL BACKGROUND

Miller initially brought an employment discrimination claim against her former employer Sprint, alleging that Sprint discriminated against her on the basis of her pregnancy when it terminated her employment. (Rec. Doc. 1). Miller's pregnancy discrimination claim arose under Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), 42 U.S.C. § 2000e–2(a)(1); and under the Louisiana Employment Discrimination Law (LEDL), Louisiana Revised Statutes § 23:301, *et seq.* (*Id.*). In her complaint, Miller additionally alleged that Sprint wrongfully denied her an extension of short-term disability ("STD") benefits in violation of her

1

rights arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*Id.*). On the eve of trial, Miller filed a <u>Joint Stipulation of Dismissal with Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)</u> (Rec. Doc. 51) dismissing her pregnancy discrimination claim.

Prior to Miller's voluntary dismissal of her pregnancy discrimination claim, Sprint filed a motion for summary judgment. (Rec. Doc. 22). In this motion, Sprint asserted that Miller could not establish a *prima facie* case of pregnancy discrimination. (*Id.*). Sprint argued in the alternative that, even if she could establish a *prima facie* case, Miller had no evidence to rebut Sprint's legitimate nondiscriminatory reasons for firing her. (*Id.*). As to Miller's ERISA claim, Sprint contended that Miller could not demonstrate that the Plan Administrator's decision to deny her extension of STD benefits was arbitrary and capricious, and therefore Miller's ERISA claim necessarily failed as a matter of law. (*Id.*). Miller opposed Sprint's motion for summary judgment. (Rec. Doc. 32). Miller, in essence, argued that there were genuine issues of material fact, with respect to both her pregnancy discrimination and ERISA claims, that precluded summary judgment.

After undertaking an initial review of the filings related to Sprint's first motion for summary judgment (Rec. Doc. 22), and following entry of the parties' joint stipulation of dismissal of Miller's pregnancy discrimination claim (Rec. Doc. 51), the Court ordered supplemental briefing from the parties. (Rec. Doc. 52). Specifically, because Miller claimed that the disability underlying her ERISA claim resulted from medical conditions related to her pregnancy, the Court ordered the parties to address the term pregnancy "complications" as that term appears in Section 3.06 of Sprint's STD Summary Plan Description ("SPD") and as that term, in context, was defined under the law. (*Id.*). The Court also ordered Sprint to file a copy of the full STD Plan, rather than an SPD, into the record to aid the Court in its analysis of the Plan Administrator's decision to deny an extension of

2

Miller's STD benefits. (*Id*.). In light of this order, the Court continued the two day non-jury trial in this matter and dismissed without prejudice Sprint's first motion for summary judgment. (*Id*.).

On May 9, 2013, the Court held a status conference wherein the parties clarified their desire to have the instant matter decided via cross-motions on the complete administrative record in lieu of trial because only the ERISA claim remained actively disputed. (*See* Rec. Doc. 64). Accordingly, the Court ordered this case removed from the trial docket to be decided on the record and the motions of the parties. (Rec. Doc. 64). The Court further ordered that any additional stipulations be submitted to the Court no later than Friday, May 31, 2013. (*Id*.). On May 31, 2013 the parties filed a Joint Stipulation (Rec. Doc. 65) to aid the Court in resolving this matter.

## II.  FACTUAL BACKGROUND

The competent summary judgment evidence establishes the following undisputed material facts. In April of 2008, Miller began working as a sales representative at Sprint's retail store in Slidell, Louisiana. Approximately one year later, Miller discovered that she was pregnant. Sometime shortly thereafter, during the months of June or July of 2009, Miller informed her store manager Roger Braud, and other Sprint employees, of her pregnancy. In August of 2009, Mr. Braud promoted Miller to a lead sales representative position.

On October 2, 2009, Miller was seen by her obstetrician/gynecologist ("OB/GYN") Dr. Vicki Steen. At this appointment, Miller described feelings of anxiety and depression that she was experiencing. Upon the medical recommendation of Dr. Steen, Miller informed Sprint that she needed to take a leave of absence. In conjunction with this leave, Miller applied for STD benefits with Sprint's Leave Management Group ("LMG"). Included in Miller's application for STD benefits was a statement from Dr. Steen expressing that Miller would be able to return to work on October 30, 2009. In accordance with Dr. Steen's recommendation, on October 20, 2009, Sprint's LMG

approved Miller's application for STD benefits, along with Family and Medical Leave Act ("FMLA") benefits, through October 29, 2009. Sprint's LMG informed Miller that, should her physician extend her medical leave beyond October 29, 2009, Miller would need to submit an extension application with supporting medical documentation.

On, or about, October 22, 2009, Miller was seen again by Dr. Steen. At this follow-up appointment, Dr. Steen prescribed Miller medication to treat the anxiety and depression Miller was apparently still experiencing. Miller however, never filled this prescription nor took any of this medication. Miller was not referred to, and did not see, a psychiatrist or other mental health professional for the anxiety and depression she described to Dr. Steen.

On October 28, 2009, Miller filed an Attending Physician's Extension of Disability form as instructed by Sprint's LMG to extend her STD benefits. On this form, Dr. Steen stated that Miller was taking medication for anxiety and depression and that Miller was to be excused from work until March 20, 2010—six weeks postpartum. Two days later, on October 30, 2009, Sprint's LMG denied Miller's request for an extension of STD benefits finding that Miller had failed to provide adequate medical documentation to support her inability to work. In its denial letter, Sprint's LMG opined that:

> There should be some kind of treatment from a mental health professional for these medical conditions other than visits with your OB/GYN. . . . Although we understand that you have conditions for which you have received medical treatment, we do not find sufficient documentation to support that these conditions cause limitations and restrictions of such severity as to prevent you from performing your own job.

(Rec. Doc. 22-12 at 42). Sprint's LMG went on to explain that Miller could appeal its decision within forty-five (45) days of the denial by writing to the Plan Administrator. (*See* Rec. Docs. 22-12 at 43 and 22-9 at 5). While denying an extension of her STD benefits, Sprint's LMG did approve Miller's FMLA leave of absence through December 24, 2009.

On December 3, 2009, Miller wrote to the Plan Administrator appealing the denial of her STD benefit extension. Appended to Miller's appeal was a handwritten note from Dr. Steen, dated November 19, 2009, stating: "To whom it concerns, OB/GYN[s] <u>do</u> treat anxiety and depression; the above was started on med[ication] and needed time off." (Rec. Doc. 22-12 at 8) (emphasis in original). On December 28, 2009, Miller wrote to the Plan Administrator a second time providing additional medical documentation, and explaining that she continued to be unable to report to work per Dr. Steen's medical recomendation. Attached to this December 28, 2009 letter was a second handwritten note from Dr. Steen, dated December 21, 2009, stating: "Due to [patient's] severe lower back [sic] caused by the sciatic nerve. [Patient] will not be able to work due to the pain." (*Id.* at 9). On December 29, 2009, a manager with Sprint's LMG, emailed Miller requesting additional medical records and stating that physicians' notes would not be sufficient to establish the need for an extension of her STD benefits. On December 31, 2009, Miller signed a medical record release form requesting Dr. Steen to provide copies of her medical records to Sprint.

On January 19, 2010, based on his review of the record, the Plan Administrator denied Miller's appeal. The Plan Administrator determined that there were no objective medical findings in the record to support a disability as defined by the Sprint STD Plan. The Plan Administrator informed Miller that she could appeal this decision to the Sprint Nextell Corporation Benefit Administrative Committee ("BAC") within ninety (90) days of his denial and/or bring a civil action under Section 502(a) of ERISA.

On September 12, 2011, Miller filed suit against Sprint in the 22nd Judicial District Court for the Parish of St. Tammany. That action was subsequently removed to this Court. As described above, the remaining dispute between the parties is before the Court on cross-motions for summary judgment. For the following reasons, Sprint's motion is **DENIED** and Miller's motion is

**GRANTED**.

## II.     LEGAL STANDARDS

### A. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant, 'show that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Ibid.* No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

To withstand a properly supported motion for summary judgment, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. *Ibid.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Therefore, if "the factfinder could reasonably find in [the nonmoving party's] favor, then summary judgment is improper." *Kelley v. Price–Macemon, Inc.*, 992

F.2d 1408, 1413 (5th Cir. 1993). Even where the Rule 56 standards are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

### B. ERISA Standard

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008); *see* 29 U.S.C. § 1132(a)(1)(B). ERISA provides the federal courts jurisdiction to review benefit determinations by fiduciaries or plan administrators. *See* 29 U.S.C. § 1132(a)(1)(B). "In determining whether to pay or deny benefits, a plan administrator must make two general . . . determinations: First, he must determine the facts underlying the claim for benefits. . . . Second, he must then determine whether those facts constitute a claim to be honored under the terms of the plan." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) (quoting *Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1557 (5th Cir. 1991)) (emphasis and internal quotation marks omitted). The plan administrator's initial fact determination is always reviewed for abuse of discretion. *Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007), abrogated on other grounds by *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 2157–58, 176 L.Ed.2d 998 (2010). The plan administrator's second determination, *i.e.*, interpretation of the plan, is reviewed *de novo* unless the plan "expressly confers discretion on the plan administrator to construe the plan's terms[, in which case,] the administrator's construction is reviewed for abuse of discretion." *Id.* at 537–38; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989).

When conducting an abuse of discretion review, the Fifth Circuit applies a two-step inquiry into the plan administrator's decision. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252,

257 (5th Cir. 2009). First, the court examines whether the plan administrator's decision was legally correct; and if so, there is no abuse of discretion. *Ibid.* If the court determines that the plan administrator's decision was not legally correct, it proceeds to the second step of this inquiry where it determines whether the plan administrator abused its discretion in making its decision. *Ibid.*

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citation omitted). An abuse of discretion occurs "only where the plan administrator acted arbitrarily or capriciously." *Ibid.* (internal quotation marks and citation omitted). A decision is considered arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 246–47 (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems.*, Inc., 168 F.3d 211, 215 (5th Cir. 1999)) (internal quotation marks omitted). The court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (*en banc*), abrogated on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). "Although we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information."*Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir. 1992).

Where an administrator has a conflict of interest, this conflict of interest is a factor to be weighed in determining an abuse of discretion. *Holland*, 576 F.3d at 247 (citing *Glenn*, 554 U.S at 115–18; *see also Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010).

Because a court reviewing an administrator's decision must take into account and weigh several case-specific factors before determining whether an administrator abused his discretion, "[a]ny one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Schexnayder*, 600 F.3d at 496 (quoting *Glenn*, 554 U.S at 128).

### III. ANALYSIS

Sprint's Short Term Disability Plan ("STD Plan"), effective January 1, 2009, designates the Employee Benefits Committee ("EBC") as the Plan Administrator as defined by ERISA. 29 U.S.C. § 1002(16)(A). The STD Plan grants the EBC authority to control and manage the operation and administration of the STD Plan. The STD Plan further provides that the EBC has discretionary authority to determine eligibility for benefits and to construe the terms of the STD Plan. Because the STD Plan expressly confers discretion on the Plan Administrator to construe the plan's terms, the Plan Administrator's construction can be reviewed only for an abuse of discretion by this Court. *Wade*, 493 F.3d at 537–38.

The governing language[1] of the STD Plan, at section 3.04, provides that a covered employee is eligible for benefits under the STD Plan only if:

- [The employee] cannot work due to an illness or injury [the employee] incur[s] on or off the job;

- [The employee] ha[s] an absence due to that illness or injury that prevents

---

[1]The Court notes that Sprint has only provided it with a copy of the Summary Plan Description ("SPD") a document that "*describes* the Short Term Disability ('STD') Plan (the 'Plan') and provides certain information required under [ERISA]." (Rec. Doc. 22-9 at 5) (emphasis added). Sprint submits to the Court that the SPD in the instant case also served as the "master Plan document" (Rec. Doc. 55), as sworn to by Collier W. Case, Sprint's Director of Benefits who served as the Plan Administrator in this matter. (Rec. Doc. 55-1). The Court finds it unnecessary to address the distinction between an ERISA benefits plan and a summary plan description as required pursuant to 29 U.S.C. § 1022(a), because here neither party has pointed to an alternative plan document in the record, both parties apparently rely upon the SPD as fully encompassing the Plan, and only a plan can be enforced under § 1132(a)(1)(B). *See CIGNA Corp. v. Amara*, ––– U.S. ––––, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). Accordingly, herein the SPD is treated as the Plan.

>  [the employee] from performing one or more of the Material Duties of [the employee's] job and continues for more than seven consecutive calendar days, which is referred to as the Waiting Period; and;
>
> • [The employee] compl[ies] with the claims procedure described in Section 5.01 of the [STD] Plan.

(Rec. Doc. 22-9 at 7).  This section goes on to describe situations that would prevent an otherwise qualified employee from being entitled to benefits under the STD Plan:

>  [The employee is] not entitled to benefits under the [STD] Plan if any of the following apply to [the employee]:
>
> \* \* \*
>
> • [The employee] engage[s] in any activity inconsistent with [the employee's] application for STD benefits;
>
> \* \* \*
>
> • [The employee is] not receiving care and treatment that is appropriate or consistent with [the employee's] illness or injury[.]

(*Id.*).

Section 3.05 of the STD Plan provides that:

> Medical information received from [the employee's] Health Care Provider will be reviewed in relation to appropriate medical guidelines as established by the medical practice community and outlined in the Official Disability Guidelines (ODG) manual. For extension of STD benefits beyond initial duration, objective medical documentation must be provided that supports a continuing disability as defined by the [STD] Plan.

(*Id.* at 7-8).

Section 3.06 describes the STD Plan's treatment of pregnancy and childbirth related claims.[2] In pertinent part, this section provides that:

---

[2] The Court notes that in Miller's initial application for STD benefits, dated October 2, 2009, Dr. Steen listed pregnancy as the primary diagnosis requiring Miller's absence from work. In Miller's application for an extension of benefits on October 28, 2009, Dr. Steen filled in an Attending Physician's Extension of Disability form and listed Miller's medical complaints of anxiety and depression as the primary and secondary diagnoses respectively, requiring Miller's absence from work.

> Uncomplicated pregnancies do not result in [the employee's] inability to work, and therefore do not result in eligibility for STD benefits. If [the employee has] <u>complications</u> of [her] pregnancy (i.e. preeclampsia), substantiated by objective medical documentation from [her] Health Care Provider, that results in [her] inability to work, STD benefits consistent with the [Official Disability Guidelines] may be approved.

(*Id.* at 8) (emphasis in original).

In support of its motion for summary judgment, Sprint argues that "it is clear that Plaintiff cannot carry her burden of showing that the Plan Administrator's decision to deny her request for additional STD benefits was arbitrary and capricious." (Rec. Doc. 22-1 at 16). In the January 19, 2010 denial letter to Miller, the Plan Administrator explains the denial of Miller's appeal stating:

> The extension of your STD claim, with a first full date out of October 2, 2009 was denied based on the limited medical information provided in support of your STD claim extension. Although you have documented office visits with your attending physician there are no objective findings to support a disability as defined by the Plan. During the appeal review it was noted that your medical records were devoted to descriptions of work-related stressors and general concerns regarding pregnancy, conditions that would not be indicative of the presence of a major mental condition for which work would be precluded. Additionally, in regard to the note signed by Dr. Vicki Steen on December 21, 2009, and received on December 28, 2009, indicating you were unable to work due to sciatic nerve pain, there is little medical documentation to support the restrictions and limitations. Treatment protocol would be dictated by the severity of depression and back pain; therefore based on the nature of your medical treatment to date, as documented in the medical information provided with your claim, your medical condition is not of the severity to prevent you from performing your job. Furthermore, the absence of referrals to specialists or more intensive treatment as normally seen in situations where an individual is unable to perform their [sic] job supports that your current medical condition is not of the severity which would prevent you from performing the material duties of your job. . . .
> It is important to understand that having a diagnosis, receiving ongoing medical treatment and/or taking prescribed medications does not necessarily constitute a disability. While we consider a physician's opinion in determining a claimant's eligibility for benefits, a physician's release is considered in context with the other medical information in the file. Without supporting documentation, a physician's opinion alone may not be considered sufficient proof of loss for the purposes of substantiating disability. Further, the information currently contained in your file does not provide medical substantiation of any complicating medical condition(s) that prevented you from returning to work, on a full-time basis, in your own job as of October 30, 2009.
> In order to qualify for STD benefits under the terms of the STD Plan, we require satisfactory medical evidence (proof of loss) to support that you are unable to

> perform, with reasonable continuity, the material duties of your own job. Our review indicates that there is insufficient evidence to support your inability to work on a full-time basis in your own job.

(Rec. Doc. 22-12 at 2-3).

Sprint argues that:

> [T]he absence of any evidence in the Administrative Record suggesting that the Plan Administrator's decision to deny Plaintiff's request for additional STD benefits was arbitrary and capricious–combined with Plaintiff's own admission that she did not follow her physician's prescribed course of therapy–compels the conclusion that the Court should enter summary judgment in favor of Sprint and dismiss Plaintiff's ERISA claim.

(Rec. Doc. 22-1 at 18).

Miller counters that the Plan Administrator's decision to deny her extension of STD benefits was arbitrary and capricious because she could have been granted leave without pay instead of being terminated. This argument is misplaced. While the issue of Miller's appeal of the denial of an extension of her STD benefits may have been entwined, to some degree, with her employment termination; ultimately, the Court must review the benefit denial on its own because the benefit denial established an independent cause of action, and was made independent of Miller's eventual termination. To the extent that Miller argues that she was not afforded a reasonable opportunity for a full and fair review as mandated by ERISA because her employment was terminated before a final decision on her STD benefits appeal was made, this argument is ineffectual. Miller asserts that: "[u]pholding her termination was a clear abuse of the Plan Administrator's discretion." (Rec. Doc. 32 at 7). Miller confuses the issues presented in her lawsuit. The Plan Administrator's function was to review and make a determination as to whether Miller was entitled to an extension of her STD benefits. The Plan Administrator was not the party responsible for making employment decisions. Accordingly, the Plan Administrator was not responsible for her termination and so this claim was not cognizable under ERISA. Further, because Miller voluntarily dismissed her pregnancy

discrimination and concomitant wrongful termination claim, the issue of her termination is no longer before the Court.

While Miller's arguments shed little light on the relevant issues before the Court, ultimately her ERISA claim prevails. The facts before the Court have established that during Miller's pregnancy she saw her OB/GYN, Dr. Steen, and described feelings of anxiety and depression; Dr. Steen subsequently prescribed Miller medication that she admittedly did not take; Miller applied for STD Plan benefits that were granted through October 29, 2009; Miller thereafter requested an extension of these benefits that, in turn, was denied by the Plan Administrator based upon his conclusion that there were no objective medical findings in the record to support a disability as defined by the Sprint STD Plan. As noted above, the Court is bound to review the Plan Administrator's determinations under an abuse of discretion standard. However, "[a]lthough we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information." *Salley*, 966 F.2d at 1015. Further, a plan administrator abuses his discretion if his "decision is not based on evidence, even if disputable, that clearly supports the basis for [his] denial." *Holland*, 576 F.3d at 246 (internal quotation marks and citation omitted).

In the instant matter, it is undisputed that the Plan Administrator failed to obtain an independent medical review of the medical evidence provided by Miller. And the only medical opinion contained in the administrative record was that provided by Dr. Steen, Miller's treating OB/GYN. Despite this, somehow, the Plan Administrator reached a conclusion contrary to Dr. Steen's explicit medical findings. The Plan Administrator went so far as to opine that Miller's "medical condition [wa]s not of the severity to prevent [her] from performing [he]r job." (Rec. Doc. 22-12 at 2-3). The administrative record is sparse but the Court finds that the Plan Administrator's

decision to contravene the medical opinion of Miller's treating physician, which constituted the sole medical opinion contained within the administrative record, while failing to compel an independent medical examination or, at the very least, engage an independent medical expert to review the medical evidence, constitutes an abuse of discretion. The only medical opinion contained in the administrative record concluded that Miller was to be excused from work until March 20, 2010—six weeks postpartum. (Rec. Doc. 22-12 at 45). An arbitrary and capricious decision is one "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust*, 168 F.3d at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996)). In the instant case, all of the evidence in the administrative record regarding Miller's disability was provided by her treating physician who concluded that Miller was temporarily disabled and unable to work through May 20, 2010. The Court finds no rational connection between this evidence and the Plan Administrator's contrary factual determination that Miller's "medical condition [wa]s not of the severity to prevent [her] from performing [he]r job." (Rec. Doc. 22-12 at 2-3). Accordingly, the Court finds that the Plan Administrator abused his discretion by making an arbitrary and capricious decision directly contradicting the only medical opinion before him. *See Bellaire*, 97 F.3d at 832 (finding an abuse of discretion when, *inter alia*, the insurer claimed that "ample evidence" supported the denial, but that evidence was contradicted by other facts in the record); *see also Salley*, 966 F.2d at 1015 (administrator abused its discretion when it denied benefits after reviewing only records from plaintiff's first hospital admission and not her second and third admissions); *see also Roig v. The Limited Long Term Disability Prog.*, 2000 WL 1146522, at *14 (E.D. La. Aug. 4, 2000) (administrator's denial of benefits was abuse of discretion because substantial evidence did not exist to rebut the opinion of the plaintiff's physician that the plaintiff was disabled).

Sprint argues unpersuasively that:

[T]here is no objective medical evidence establishing that Plaintiff was suffering from such severe anxiety and depression that she was unable to perform the Material Duties of her job. Indeed, the only materials in the Administrative Record regarding these alleged conditions **during the timeframe Plaintiff's STD submissions claimed she was experiencing them** consist entirely of Plaintiff's self-serving and conclusory correspondence to Sprint and hand-scrawled notes unsupported by objective medical documentation. . . . Notably, any purported symptoms from Plaintiff's alleged depression and anxiety first appeared during an appointment taking place three months (December 31, 2009) after Plaintiff's initial request for STD benefits–this was also three days after Plaintiff changed the stated reason for her inability to work from depression/anxiety to back pain–and just two days after Sprint had requested that Plaintiff provide all of her medical records.

(Rec. Doc. 54-1 at 3) (emphasis in original). This argument does not comport with the administrative record and is therefore fruitless. As described above, it is clear that Miller presented with complaints of anxiety and depression as early as October 2, 2009. (Rec. Doc. 22-1 at 3). Furthermore, Sprint's LMG unequivocally referenced Miller's complaints of anxiety and depression in its initial denial letter of October 30, 2009 as detailed above.

Sprint additionally argues that Miller's failure to take the medication prescribed by Dr. Steen to treat her anxiety and depression precludes her entitlement to an extension of STD benefits. This argument is also unavailing. It is undisputed that Miller's physician prescribed medication that Miller failed to take. The Sprint SPD at Section 3.04 states that an otherwise eligible employee will not be entitled to benefits if that employee "engage[s] in any activity inconsistent with [the employee's] application for STD benefits" or is "not receiving care and treatment that is appropriate or consistent with [the employee's] illness or injury[.]" (Rec. Doc. 22-9 at 7). Additionally, Collier W. Case, Sprint's Director of Benefits who served as the Plan Administrator, stated in affidavit that: "Based on the aforementioned Plan provisions, a participant is disqualified from receiving STD benefits if she does not take the medication prescribed to treat her underlying illness or injury. . . ." (Rec. Doc. 22-8 at 3). Arguably therefore, this fact—that Miller did not take the medication

15

prescribed by Dr. Steen to treat Miller's underlying illness—could have provided the Plan Administrator justifiable grounds upon which to rest a benefit denial; <u>had this fact been before the Plan Administrator</u> when he undertook his review of Miller's claim. Ultimately, this argument is of no moment in the instant litigation however, because this fact was <u>not</u> before the Plan Administrator when he undertook his review of Miller's claim. *See Meditrust*, 168 F.3d at 215 ("Assuming that both parties were given an opportunity to present facts to the administrator, our review of factual determinations is confined to the record available to the administrator."). Because Miller's failure to abide by her physician's treatment regimen only came to light through discovery in the instant litigation, (Rec. Doc. 22-2 at 4; 22-3 at 12), this fact was not included in the record available to the Plan Administrator when he rendered his decision and therefore could not have influenced that decision nor properly justify it *post facto*.

Because the Court finds that the Plan Administrator's failure "to obtain the necessary information[,]" *Salley*, 966 F.2d at 1015, *e.g.*, consulting with an independent medical expert or ordering an independent medical examination to allay any reasonable concerns he may have had, while rendering a decision directly contrary to the sole medical opinion before him, constituted an abuse of discretion, the Court must dismiss Sprint's motion for summary judgment and grant Miller's motion for summary judgment.

Having considered the complaint, the record, the submissions of the parties and the applicable law, even under the highly deferential standard that the Court employs in ERISA cases where an employee benefit plan expressly confers discretion on a plan administrator to construe the plan's terms, the Court finds that there was an abuse of discretion in the instant matter and accordingly must deny the Defendant's motion for summary judgment and grant the Plaintiff's motion for summary judgment.

## IV.     CONCLUSION

Accordingly;

**IT IS ORDERED** that <u>Defendant's Motion for Summary Judgment</u> (Rec. Doc. 54) filed by Defendant Sprint/United Management Company is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff Tiffany Miller's motion for summary judgment (Rec. Doc. 57) is **GRANTED**. Accordingly, Miller is hereby entitled to benefits arising out of her ERISA claim.

**IT IS FURTHER ORDERED** that in light of the Court's decision, the parties shall meet in person no later than Wednesday, August 7, 2013 to discuss the exact amount due Miller. If no agreement is reached, a status conference with the Court shall take place in chambers on **Thursday, August 22, 2013 at 9:45 a.m.** If a compromise is entered into by the parties, counsel shall immediately notify the Court.

This 24th day of July, 2013.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE