**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIFFANY MILLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-21** |
| **ROGER BRAUD, ET AL.** | **SECTION "A"(3)** |

**REPORT AND RECOMMENDATION**
**REGARDING QUANTUM OF ATTORNEY'S FEES**

On August 15, 2013, the District Judge referred Plaintiff's Motion for Attorney Fees [Doc. #68] to the undersigned Magistrate Judge. [Doc. #69]. The motion is opposed. For the reasons set forth below, IT IS RECOMMENDED that Plaintiff's Motion for Attorney Fees [Doc. #68] be GRANTED IN PART and that order and judgment issue awarding attorney's fees and costs in favor of plaintiff Tiffany Miller and against defendant Sprint/United Management Company ("Sprint") in the amount of **$10,086.25**.

**I.    BACKGROUND**

Miller initially brought an employment discrimination claim against her former employer Sprint/United Management Company ("Sprint"), alleging that Sprint discriminated against her on the basis of her pregnancy when it terminated her employment. Miller's pregnancy discrimination claim arose under Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), 42 U.S.C. § 2000e-2(a)(1); and under the Louisiana Employment Discrimination Law ("LEDL"), Louisiana Revised Statute § 23:301 *et seq.* In her complaint, Miller additionally alleged that Sprint wrongfully denied her an extension of short-term disability ("STD") benefits in violation

1

of her rights arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* On the eve of trial, Miller filed a Joint Stipulation of Dismissal with Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) [Doc. #51] in which she dismissed her pregnancy discrimination claim.

Before Miller's voluntary dismissal of her pregnancy discrimination claim, Sprint filed a motion for summary judgment. In that motion, Sprint asserted that Miller could not establish a *prima facie* case of pregnancy discrimination. Sprint argued in the alternative that, even if she could establish a *prima facie* case, Miller had no evidence to rebut Sprint's legitimate nondiscriminatory reasons for firing her. As to Miller's ERISA claim, Sprint contended that Miller could not demonstrate that the Plan Administrator's decision to deny her extension of STD benefits was arbitrary and capricious, and therefore Miller's ERISA claim necessarily failed as a matter of law. Miller opposed Sprint's motion for summary judgment. Miller, in essence, argued that there were genuine issues of material fact with respect to both her pregnancy discrimination and ERISA claims that precluded summary judgment.

After undertaking an initial review of the filings related to Sprint's first motion for summary judgment, and following entry of the parties' joint stipulation of dismissal of Miller's pregnancy discrimination claim, the District Court ordered supplemental briefing from the parties. [Doc. #52]. Specifically, because Miller claimed that the disability underlying her ERISA claim resulted from medical conditions related to her pregnancy, the District Court ordered the parties to address the term pregnancy "complications" as that term appears in Section 3.06 of Sprint's STD Summary Plan Description ("SPD") and as that term, in context, was defined under the law. The Court also ordered Sprint to file a copy of the full STD Plan, rather than an SPD, into the record to aid the District Court

2

in its analysis of the Plan Administrator's decision to deny an extension of Miller's STD benefits.

On May 9, 2013, the District Court held a status conference at which the parties clarified their desire to have the instant matter decided via cross-motions on the complete administrative record in lieu of trial because only the ERISA claim remained actively disputed. The District Court ordered that any additional stipulations be submitted to it no later than Friday, May 31, 2013. On that date, the parties filed a Joint Stipulation to aid the District Court to resolve this matter.

On July 25, 2013, the District Court granted plaintiff's motion for summary judgment and denied Sprint's cross-motion. The District Court ultimately held that "Miller is hereby entitled to benefits arising out of her ERISA claim." [Doc. #66 at p. 17]. The District Court held that the Plan Administrator's decision to deny Miller benefits under ERISA was arbitrary and capricious in that his decision contravened the only medical opinion in the record, that of Miller's treating physician. [*Id.* at pp. 13-14].

Miller now seeks $19,453.50 in attorney's fees and $805.72 in costs under 29 U.S.C. § 1132(g)(1). Sprint opposes any award of attorney's fees.

**II.     Law and Analysis**

    **A.     Entitlement to Attorney's Fees**

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In deciding whether to award attorneys' fees to a particular party,

> a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;

>and (5) the relative merit of the parties' positions. No one of these factors is necessarily decisive, and some may not be appropriate in a given case, but together they are the nuclei of concerns that a court should address in applying section [1132(g)(1)].

*Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) (citations and footnote omitted)).

Sprint contests Miller's entitlement to attorney's fees at all in this lawsuit. Sprint first argues that the time spent by Miller's counsel did absolutely nothing to bolster her ERISA claim. Sprint notes that even the District Court remarked in its opinion that Miller's argument "shed little light on the relevant issues before the Court . . . ." [Doc. #66 at p. 13]. Citing Ninth Circuit case law, Sprint contends that the Court must determine whether "the work product . . . was both useful and of a type ordinarily necessary to advance the . . . litigation." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (quoting *Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985)). Sprint maintains that that is not the case here.

The Court finds otherwise. The District Court ultimately concluded that the Plan Administrator had abused his discretion in discounting the medical opinions of Miller's treating physician – the only medical opinion in the record – and by not ordering an independent medical examination. [Doc. #66 at pp. 13-14]. This Court has reviewed Plaintiff's Opposition to Defendant's Supplemental Brief in Support of Summary Judgment [Doc. #57] and finds that the District Court used information cited in said opposition. While the Court recognizes that the majority of the brief "shed little light on the relevant issues" before the District Court, the simple fact of the matter is that the District Court quoted factual information from Miller's brief in its order. This Court is not about to enter the unchartered waters of determining how much of a party's

pleading must be used by a court before it determines whether that party is entitled to attorney's fees.

Sprint also argues that the five *Bowen* factors – outlined above – weight in its favor and against an award of attorney's fees. As noted above, the Court considers: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merit of the parties' positions.

With regard to the first factor, Sprint argues that its decision to deny plaintiff an extension of her STD benefits was not in bad faith as her claim was based solely on conclusory statements unsupported by objective medical evidence. But this argument is specious, and the District Court has already rejected it, noting that the **only** evidence in the record was that of plaintiff's treating physician (which supported her claim). [Doc. #66 at p. 15]. Sprint also argues that if any party was in bad faith, it was plaintiff because she failed to take the medication prescribed by her doctor and falsely informed her doctor that she was taking the medication. But this argument is also fruitless because this information was not known by the Plan Administrator when he denied plaintiff her STD benefits. [*Id.* at 15-16]. This information was only learned through discovery in this lawsuit and was not a basis for the Plan Administrator's denial. [*Id.* at p.16].

In *Schexnayder v. Hartford Life & Accident Insurance Company*, relied on by Sprint, the Fifth Circuit held:

> A finding of bad faith requires more than simply establishing that there was a conflict of interest. *See Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006) (holding that although the record showed that the plan administrator's decision furthered its financial interest, the first factor in the Bowen analysis did not

> weigh against the plan administrator absent evidence of bad faith), abrogated on other grounds by *Glenn*, 128 S.Ct. at 2343. Instead, a plaintiff must prove that the conflict of interest actually and improperly motivated the decision. This higher standard separates those cases in which a conflict of interest tips the scale in favor of reversing the plan administrator's benefits determination from those cases in which the plan administrator's bad faith clearly motivated the decision. If, for example, a plaintiff shows that the insurer provided additional compensation for plan administrators who denied claims or that the insurer has a history of biased claims, then the plaintiff will have made an adequate showing of bad faith that would entitle him to attorneys' fees.
> . . . .
> First, we find that there is no evidence that Hartford acted in bad faith in denying Schexnayder's claim. Hartford sought to reconcile conflicting medical evidence by actively investigating Schexnayder's claim. Although we find that Hartford's method of deciding Schexnayder's claim was unreasonable, there was substantial evidence to support its conclusion.

600 F.3d 465, 472 (5th Cir. 2010).  Here, however, the District Court has already held that Sprint did not seek to reconcile conflicting medical evidence because there was no conflicting medical evidence in the record.  As noted, the only medical evidence in the record was that of plaintiff's treating physician, evidence that supported her claim.  And the District Court's opinion also notes that there was no substantial evidence to support Sprint's denial of benefits; indeed, the District Court noted that the only objective medical evidence in the record supported plaintiff.  While this is a close call, the Court finds that this factor weighs in favor of granting attorney's fees.

Sprint does not dispute that it can satisfy an award of attorneys' fees, and, as in *Schexnayder*, the Court finds that an award of attorney's fees may deter it from failing to order an independent medical examination before outright rejecting the sole medical opinion before it.  *See id.*  These factors thus weigh in favor of an award of attorney's fees.  And while the Court finds no evidence in the record that plaintiff intended to benefit anyone but herself (the fourth *Bowen* factor), the Court is compelled by the District Court's opinion to find that there was very little merit to Sprint's position in this lawsuit (the fifth *Bowen* factor).  Accordingly, four of the five factors weigh in favor of

attorney's fees, and the Court will now examine the request for fees.

### A. THE LODESTAR APPROACH

The United States Supreme Court and the Fifth Circuit have oft-repeated that a request for attorneys' fees should not spawn major ancillary litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir.1990). A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous. *Hopwood v. State of Tex.*, 236 F.3d 256, 277, n.79 (5th Cir. 2000); *Hensley*, 461 U.S. at 436-37.

To determine a reasonable fee, the court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley*, 461 U.S. at 437-39, 103 S.Ct. at 1941-43; *Associated Builders and Contractors*, 919 F.2d at 379. The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

In assessing the reasonableness of attorneys' fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educ. Fund,* 284 F.3d 642, 661 (5th Cir. 2002); *Migis v. Pearle Vision, Inc.*, 135 F.2d 1041, 1047 (5th Cir.1998); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995). The fee

7

applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *Kellstrom*, 50 F.3d at 324; *In re Smith*, 996 F.2d 973, 978 (5th Cir.1992).

### 1. Reasonable Hourly Rates

Plaintiff seeks $19,453.50 in attorney's fees (78.6 hours at $275.00/hour with a ten per cent discount). Turning to the time records compiled and submitted by plaintiff's counsel, this Court finds that the hourly rate of $275.00/hour for Willie M. Zanders is reasonable. Zanders is a sole practitioner with at least 15 years of experience in federal court (his original admission date in this Court was July 22, 1998). This Court has recently sanctioned similar hourly rates for attorneys with similar years of experience, and the Court recognizes that the hourly rates have increased through the past few years. *See, e.g., Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701 (E.D. La. 2009) (awarding $300.00/hour for partners, $225.00/hour for associates, and $75.00/hour for paralegals)*; Entergy La., L.L.C. v. The Wackenhut Corp.*, Civ. A. No. 09-7367, 2010 WL 4812921 (E.D. La. Nov. 17, 2010) (awarding $175.00/hour to attorney with 16 years of experience); *Wilson v. Tulane Univ.*, Civ. A. No. 09-7451, 2010 WL 3943543 (E.D. La. Oct. 4, 2010) (awarding $250.00/hour and $160.00 hour to attorneys with 25 and four years experience respectively); *Hebert v. Rodriguez*, Civ. A. No. 08-5240, 2010 WL 2360718 (E.D. La. June 8, 2010) (awarding $300.00/hour to attorney with 33 years of experience); *Gulf Coast Facilities Mgmt, L.L.C. v. BG LNG Servs., L.L.C.*, Civ. A. No. 09-3822, 2010 WL 2773208 (E.D. La. July 13, 2010) (awarding $300.00/hour to attorneys with 17 years experience and $180.00/hour and $135.00/hour to attorneys with seven years and two years experience respectively); *Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.*, Civ. A. No. 09-158, 2010 WL 6300009 (E.D. La. Feb. 19, 2010) (awarding $210.00/hour, $250.00/hour and $180.00/hour to attorneys with 20, ten and four years experience

respectively); *Marks v. Standard Fire Ins. Co.*, Civ. A. No. 09-1947, 2010 WL 487403 (E.D. La. Feb. 3, 2010) (awarding $185.00/hour to attorney with seven years of experience).

### 2. Reasonable Hours Expended

The Court must next determine whether the number of hours that defense counsel expended on the litigation was reasonable. The burden of proving the reasonableness of the hours expended is on the fee applicant. *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001). As a general proposition, all time that is excessive, duplicative, and/or unproductive should be excised from any award of attorney's fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The fee seeker's attorneys "are charged with proving that they exercised billing judgment." *Id.* at 770. When billing judgment is lacking, the court *must* exclude from the lodestar calculation the hours that were not reasonably expended.

This Court has reviewed line by line the billing statement submitted on behalf of plaintiff's counsel and finds the hours expended by counsel to be reasonable. The billing statement reflects that plaintiff's counsel, *inter alia*, drafted the initial complaint, responded to discovery, prepared plaintiff for and attended her deposition, opposed a motion for summary judgment, prepared supplemental briefs as ordered by the District Court and even prepare plaintiff's insert for the pre-trial order. While Sprint challenges whether plaintiff's counsel exercised "billing judgment," the Court's review of the billing statement satisfies it that counsel did so.

Notwithstanding this finding, the Court finds that Sprint's argument that plaintiff can not recover the fees expended on her unsuccessful pregnancy discrimination claim has merit. Sprint

is correct when it notes that plaintiff's pregnancy discrimination claim was separate and distinct from her ERISA claim because it involved different statutes, legal theories, facts, and witnesses. *See, e.g., Tanzini v. Marine Midland Bank, N.A.*, 978 F. Supp. 70, 84 (N.D.N.Y 1997) (holding that an ERISA cause of action and a discrimination claim "[we]re sufficiently distinct, as are the legal theories under which the claims [we]re brought" and therefore were unrelated for purposes of calculating attorney's fee award). Accordingly, the Court finds that the time expended on plaintiff's pregnancy discrimination claim is not compensable and must be excluded from any award of attorney's fees. *See, e.g., St. Luke's Episcopal Hosp. v. Acordia Nat'l*, No. H-05-1438, 2008 U.S. Dist. LEXIS 17965, *19 (S.D. Tex. Mar. 7, 2008) (excluding from attorney's fee award the "time and work unrelated to the merits of the [ERISA] dispute."). Because the majority of the time entries are not specifically designated to either claim, however, the Court will reduce the attorney's fee award by 50 per cent. Accordingly, the Court finds that plaintiff's counsel is entitled to an attorney fee award of $9,726.25.

    **B.    COSTS**

Costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court otherwise directs. Fed. R. Civ. P. 54(d). Section 1920 provides that a prevailing party may recover the following costs:

    (1)    Fees of the clerk and marshal;
    (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)    Fees and disbursements for printing and witnesses;
    (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5)    Docket fees under section 1923 of this title;
    (6)    Compensation of court appointed experts, compensation of interpreters, and salaries,

>fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920(1)-(6). A court may award only those costs specified in Section 1920 unless there is explicit statutory or contractual authority to the contrary. *Mota v. Univ. of Texas Houston Health Science Ctr.*, 261 F.3d 512, 529 (5th Cir.2001). Allowable costs are limited to these categories, and expenses that are not authorized by statute must be borne by the party incurring them. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

When cost-seekers neglect to supply any verification that the costs claimed were "necessarily incurred in the case" and instead state only that the costs were expended "in the preparation and litigation of this case," the district court does not abuse its discretion by denying all costs except filing fees. *Phetosomone v. Allison Reed Group, Inc.*, 984 F.2d 4, 9 (1st Cir. 1993); *accord Home Builders Ass'n v. City of Madison*, 191 F.R.D. 515, 517, 518, 519 (N.D. Miss. 1999) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991); *Studiengesellschaft Kohle v. Eastman Kodak*, 713 F.2d 128, 133 (5th Cir. 1983)).

Here, plaintiff's counsel seeks $805.72 in costs for the deposition transcript of Tiffany Miller and the filing fee for the petition for damages. Plaintiff is entitled to recover the filing fee of $360.00. 28 U.S.C. § 1920(1). She is not, however, entitled to the cost of her deposition transcript. As noted, plaintiff bears the burden to demonstrate that the cost of this transcript was "necessarily obtained for use in the case." She has not done so here; indeed, there is no argument to support this cost in her memorandum in support. And Sprint is correct when it notes that the District Court did not rely on her deposition when it ruled on the cross-motions for summary judgment. Accordingly, the Court will not award the fee for the deposition transcript.

## RECOMMENDATION

Accordingly and for all of the above and foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Attorney Fees [Doc. #68] be GRANTED IN PART in the amount of **$10,086.25**.

## NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 21st day of November, 2013.

                                         **DANIEL E. KNOWLES, III**
                                         **UNITED STATES MAGISTRATE JUDGE**